LINCOLN BANK (SUFFOLK BANK v.). See Case No. 13,590.

LINCOLN COUNTY (UNION PAC. R. CO. v.). See Cases Nos. 14,378–14.380.

LINCOLN COUNTY (UNITED STATES v.). See Case No. 15.503.

LIND, The JENNY. See Case No. 7,287.

## Case No. 8,358.

### In re LINDAUER.

[7 Blatchf. 249.] [1]

Circuit Court, S. D. New York. May 31, 1870.

HABEAS CORPUS — LOTTERY TICKET DEALERS—INTERNAL REVENUE LAWS—SPECIAL TAX.

1. The various provisions of the internal revenue laws imposing penalties on persons for carrying on the business of lottery ticket dealers or lottery dealers without complying with the laws, considered.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2. The 13th section of the act of March 3, 1865 (13 Stat. 485), as amended by the act of July 27th, 1866 (14 Stat. 301), is not inconsistent with the 73d section of the act of June 30, 1864 (13 Stat. 249), as amended by the act of March 2, 1867 (14 Stat. 471), and the two can stand together.

3. A person may be indicted under the 13th section of the act of March 3, 1865, as amended by the act of July 27, 1866, for engaging or being concerned in the business of a lottery dealer without having paid the special tax required by law, and, on conviction, be punished by imprisonment.

[Cited in U. S. v. Page, Case No. 15,988.]

4. The special tax on lottery dealers named in the act of July 27, 1866, is the special tax imposed on lottery ticket dealers by the act of July 13, 1866 (14 Stat. 113).

[In the matter of Louis Lindauer.]

Elijah M. Hussey, for the application.

BLATCHFORD, District Judge. This is an application for a writ of habeas corpus. The petitioner was convicted in this court, by pleading guilty to an indictment found against him therein, and was sentenced on such conviction, the court which imposed the sentence having been held by Judge Woodruff. I have conferred with him on the questions raised in the case, and we concur in the conclusion that the application must be denied.

The indictment was found on the 24th of November, 1869. The petitioner, on his conviction, was sentenced, on the 19th of March, 1870, to be imprisoned for six months. Under that sentence he is now confined in the custody of the marshal, in the jail of the city and county of New York. The application for the writ is made on the ground that the sentence was erroneous, for the reason that the statute under which the conviction* was had does not authorize imprisonment, but authorizes only a fine.

The indictment consists of two counts. The first count charges, that, on the 1st of August, 1869, the defendant, knowingly and unlawfully, did engage, and was concerned, in the business of a lottery ticket dealer, within the meaning of the statute of the United States, without having paid the special tax of one hundred dollars, as in that behalf is required to be paid by the statute of the United States in such case made and provided. The second count charges, that the defendant, on the 1st of August, 1869, did exercise and carry on the business of a lottery ticket dealer, upon which said business a special tax is imposed by law, without having paid the special tax, as in that behalf required by the statute of the United States. The two counts are, in substance, the same, except that the first charges him with having engaged, and been concerned, in the business of a lottery ticket dealer, while the second charges him with having exercised and carried on the business of a lottery ticket dealer—in each case without having paid the special tax required by law. The first count mentions the amount

of the tax—one hundred dollars. The second count does not mention any amount, but merely says that a special tax was imposed on the business, and that he exercised and carried on the business without having paid such tax. Why this distinction in the language was made—one count using the words "engage, and was concerned, in," and the other using the words "exercise and carry on," will appear from the statutes on the subject.

The first time that the imposition of a penalty upon any person for carrying on any business without complying with the law on the subject, appears in the statute book, is in the 73d section of the act of June 30, 1864 (13 Stat. 249). Under that act, a license was required to be taken for the carrying on of various trades, businesses and professions, and, among others, that of lottery ticket dealer. Subdivisions 6 of the 79th section of that act required lottery ticket dealers to pay one hundred dollars for each license, and provided, that every person who should make, sell, or offer to sell, lottery tickets, or any device representing or intended to represent a lottery ticket, or any policy of numbers in any lottery, or should manage any lottery, or prepare schemes of lotteries, or superintend the drawing of any lottery, should be deemed a lottery ticket dealer, under the act. The 73d section of the same act provided, that, if any person should exercise or carry on any trade, business or profession, for the exercising or carrying on of which a license was required by the act, without taking out such license, he should, for every such offence, besides being liable to pay the tax, be subject to imprisonment for a term not exceeding two years, or a fine not exceeding five hundred dollars, or both.

On the 3d of March, 1865, an act was passed (13 Stat. 469), amending various sections of the act of June 30, 1864, but not amending the 73d section of that act. The 13th section of this act of March 3, 1865, was a new enactment on the subject of lotteries, and provided as follows: "All persons, and every person, who shall engage or be concerned in the business of a lottery dealer, without first having obtained a license so to do, under such rules and regulations as shall be prescribed by the secretary of the treasury, shall forfeit and pay a penalty of one thousand dollars, and shall, on conviction by any court of competent jurisdiction, suffer imprisonment for a period not exceeding a year, at the discretion of the court." This 13th section unequivocally implies the understanding of congress, that there was then required by law a license for engaging or being concerned in the business of a lottery dealer; otherwise, it would have been absurd for congress to say, that a person who should engage or be concerned in such business, without having first obtained a license so to do, should, on conviction, suffer imprisonment. The only provision of law which then existed in re-

spect to the obtaining of licenses by lottery dealers, was the provision of the act of 1864, for the payment of one hundred dollars for each license by lottery ticket dealers. It follows, that, when congress spoke of a "lottery dealer," in the act of 1865, they meant such a "lottery ticket dealer" as was defined in the act of 1864; otherwise, the provision of the 13th section of the act of 1865 would have been utterly meaningless. Therefore, it is apparent that congress intended, by the 13th section of the act of 1865, to take lottery ticket dealers out of the general provisions of the seventy-third section of the act of 1864, which imposed on all persons who should exercise any business requiring a license, without taking out such license, a certain punishment, and to place them under the special provisions of the 13th section of the act of 1865. The act of 1864 provided, as a punishment, imprisonment for a term not exceeding two years, or a fine not exceeding five hundred dollars, or both. The act of 1865 imposed imprisonment for a period not exceeding a year, nothing being said about a fine.

The act of July 13, 1866 (14 Stat. 113), amended the 73d section of the act of 1864, by imposing the punishment of imprisonment or fine, or both, imposed by the 73d section of the act of 1864, upon any one who should exercise or carry on any trade, business or profession, for the exercising or carrying on of which a special tax was imposed by law, without paying such special tax. The reason for this amendment was, that, by the act of 1866, congress abolished the system of granting licenses, and merely required special taxes to be paid for the exercising or carrying on of the trades, businesses or professions. The special tax for lottery ticket dealers was fixed by the act of 1866 at one hundred dollars, and that act gave the same definition to the term "lottery ticket dealers," as was given to it in the act of 1864. The amendment made by the act of 1866 to the 73d section of the act of 1864 was, to re-enact the latter section, only imposing the imprisonment or fine, or both, as a punishment on a conviction for carrying on the business without paying the special tax, instead of imposing it as a punishment on a conviction for carrying on the business without obtaining the license. There is nothing in this legislation that makes the 13th section of the act of 1865 inconsistent with the 73d section of the act of 1864, as amended by the act of 1866. The two can stand together, quite as well as the 73d section of the act of 1864 could, before the amendment of 1866, stand with the 13th section of the act of 1865.

We come, next, to the act of July 27, 1866, (14 Stat. 301). Congress having, by the act of July 13, 1866, adopted the system of special taxes instead of the system of licenses, and applied it to the provisions of the act of 1864, found in existence the 13th section of the act of March 3, 1865, imposing a punishment by imprisonment, on a conviction for engaging or being concerned in the business of a lottery dealer without having first obtained a license so to do. It was apparent, that, as licenses had been abolished, such 13th section must be amended, to conform to the new system. Therefore, the act of July 27, 1866, was passed, which contained nothing but a provision amending this 13th section of the act of 1865, by striking out the words, "without having first obtained a license so to do," and inserting, in lieu thereof, the words, "without paying the special tax therefor;" thus making the 13th section of the act of 1865 to provide, that, on a conviction for engaging or being concerned in the business of a lottery dealer without paying the special tax therefor, the party convicted should suffer imprisonment for a period not exceeding a year. This enactment shows, that it was the intention of congress that the 13th section of the act of 1865 should continue in force, notwithstanding the amendments made to the 73d section of the act of 1864.

We then come to the act of March 2, 1867, (14 Stat. 471), the 9th section of which amended again the 73d section of the act of 1864, by striking it out, and providing instead, that any person who should exercise or carry on any trade, business or profession, for the exercising or carrying on of which a special tax was imposed by law, without payment thereof, should be subject to a fine or penalty of not less than ten nor more than five hundred dollars. In other words, they struck out of the general provisions of the 73d section, as they had existed up to that time, the provision for imprisonment, and made the punishment merely a fine. But the section, as amended, went on to provide, that if the person should be a manufacturer of tobacco, snuff or cigars, or a wholesale or retail dealer in liquor, he should be further liable to imprisonment for a term not less than sixty days and not exceeding two years. There is nothing in the 73d section of the act of 1864, as amended by the act of 1867, which is inconsistent with the provisions of the 13th section of the act of 1865, any more than there was any inconsistency between the 73d section of the act of 1864, as originally enacted, and the 13th section of the act of 1865. The two have stood together always and they continue to stand together. There is nothing inconsistent between them. It is evident that congress intended that the two should run on pari passu. It is evident, also, that the "lottery dealer" mentioned in the act of 1865 must be considered as being the "lottery ticket dealer" defined in the statute; otherwise, we have an inhibition against the exercise of the business of a lottery dealer without paying a special tax, when no special tax is imposed except on the exercise of the business of a lottery ticket dealer. Moreover, it is impossible to conceive how a person can, under the designation of a lottery dealer, do any thing in connection with lotteries, that is not

embraced in the statutory definition of a lottery ticket dealer. It was suggested, on the argument, that a man might be a lottery dealer, by selling out to another the good will of a business of selling lottery tickets. But that would not make the person a lottery dealer within the good sense of the statute; and it is quite evident that congress intended the same person by both designations—a "lottery dealer" and a "lottery ticket dealer."

It follows, therefore, that, as each count of the indictment charges the defendant with having violated the law in respect of the business of a lottery ticket dealer, he was properly punished by imprisonment, under the 13th section of the act of 1865. He was indicted under that section, as well as under the 73d section of the act of 1864, as amended. That 13th section imposes the punishment of imprisonment upon any one who shall engage or be concerned in such business, without having paid the special tax; and the first count of the indictment, which charges that the defendant did engage, and was concerned, in such business, was evidently framed on that 13th section. The second count charges him with having exercised and carried on such business without having paid the special tax, and is framed on the 73d section of the act of 1864, as amended. As the defendant pleaded guilty to both counts of the indictment, and as at least one of them is good, and as the conviction and sentence apply to each count, it follows, that there is no cause for the defendant's discharge, and that the writ of habeas corpus must be refused.

The question involved in this case was before Judge Benedict, in this court, in the case of U. S. v. Bauer [Case No. 14,546], in December, 1869, where the defendant was indicted under the 13th section of the act of 1865. A motion to quash the indictment was made, on the ground that such 13th section was repealed, by implication, by the act of 1867, because that act repealed all previous provisions of law inconsistent with it. Judge Benedict held that there was no inconsistency between the two sections, and that they could stand together, and refused to quash the indictment.